# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39095

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 68 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 21, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CRAIG CHARLES RISDON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

Judgment of conviction for statutory rape, <u>affirmed</u>.

Whittington Law Office, Chtd.; Kent E. Whittington, Idaho Falls, for appellant. Kent E. Whittington argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Judge

Craig Charles Risdon appeals from his judgment of conviction entered upon his conditional guilty plea to statutory rape. Specifically, he challenges the denial of his motion to dismiss on constitutional and statutory speedy trial grounds. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

At the age of twenty-eight, Risdon engaged in a sexual relationship with a fifteen-year-old girl, resulting in her pregnancy. A criminal complaint was issued on October 16, 2009, charging Risdon with two counts of statutory rape, Idaho Code § 18-6101(1). Risdon was arrested in California on October 28 and made an initial appearance in Idaho on November 12. A preliminary hearing was scheduled for November 25. However, the parties stipulated three times to continue the preliminary hearing: twice because they were awaiting DNA test results of the infant born to the victim and once because defense counsel had a scheduling conflict. On

February 16, 2010, Risdon was charged by information with two counts of statutory rape, but was not arraigned until May 5 because he requested, and the parties stipulated to, a further delay in order to obtain the DNA results. At the arraignment, the district court scheduled a pretrial conference for July 28 and a jury trial to commence on August 9.

On the date of the pretrial conference, the State moved to continue the trial because the state forensic laboratory scientist who performed the DNA testing establishing Risdon's paternity of the infant (hereinafter "DNA scientist"), would be unavailable to testify at trial due to medical complications arising from pregnancy. The district court granted the motion to continue, finding there was good cause for the delay given the DNA scientist's medical condition. Because the State was told the DNA scientist would be unavailable for approximately seven more months, the prosecution agreed to request that the state lab retest the DNA samples, which the State estimated would take approximately sixty to ninety days. The district court reset the trial for November 1.

On September 16, the State again moved to continue the trial on the basis the state lab declined to retest the DNA samples, as it was against the lab's policy to do so. Without Risdon or his counsel present, the district court granted the motion, resetting trial for January 24, 2011. On January 12, Risdon filed a motion to continue the trial and to dismiss the case on both constitutional and statutory speedy trial grounds. The district court denied the motion to dismiss, reaffirming its prior ruling that there was good cause for the delay due to witness unavailability and the lab's "good faith" refusal to perform retesting.

Apparently granting Risdon's motion to continue, the district court vacated the January 24 trial date and scheduled a status conference for January 27, during which trial was again rescheduled to February 22. However, prior to the trial date, the parties entered a conditional plea agreement, whereby Risdon agreed to plead guilty to one count of statutory rape, but preserved his right to appeal the denial of his motion to dismiss. Risdon now appeals.

## II.

## ANALYSIS

Risdon argues the district court erred in denying his motion to dismiss on constitutional and statutory speedy trial grounds. In Idaho, criminal defendants enjoy both constitutional and statutory entitlements to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution.

2

These constitutional protections are supplemented by Idaho Code § 19-3501, which sets specific time limits within which a criminal defendant must be brought to trial. As relevant to the prosecution here, the statute provides:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>
> . . . .
>
> (2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the information is filed with the court.

I.C. § 19-3501. Under this statute, the State bears the burden to demonstrate good cause for a failure to bring a defendant to trial within the six-month limit. *State v. Clark*, 135 Idaho 255, 258, 16 P.3d 931, 934 (2000); *State v. Jacobson*, 153 Idaho 377, 378, 283 P.3d 124, 125 (Ct. App. 2012).

Whether there was an infringement of a defendant's right to a speedy trial presents a mixed question of law and fact. *Clark*, 135 Idaho at 257, 16 P.3d at 933. The ultimate question of whether legal excuse has been shown is a matter for judicial determination upon the facts and circumstances of each case. *Jacobson*, 153 Idaho at 378, 283 P.3d at 125. Although we defer to the trial court's findings of fact if supported by substantial and competent evidence, we exercise free review of the trial court's conclusions of law. *Clark*, 135 Idaho at 257, 16 P.3d at 933.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court addressed application of the speedy trial right guaranteed by the Sixth Amendment and chose a flexible approach for assessing whether a speedy trial has been *unconstitutionally* denied. The Court adopted a balancing test in which the conduct of the defendant and the prosecution are to be considered, and the Court identified four primary factors to be weighed in determining whether a particular defendant has been deprived of his Sixth Amendment speedy trial right: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. The *Barker* balancing test was adopted by the Idaho Supreme Court for determining whether the speedy trial guarantee of the Idaho Constitution has been violated. *See State v. Lindsay*, 96 Idaho 474, 475-76, 531 P.2d 236, 237-38 (1975).

In *State v. Russell*, 108 Idaho 58, 62, 696 P.2d 909, 913 (1985), our Supreme Court also adopted the *Barker* factors and balancing test to address asserted violations of section 19-3501, and numerous appellate decisions thereafter utilized that test where a violation of the statute was

3

claimed. However, in *Clark*, 135 Idaho 255, 16 P.3d 931, the Idaho Supreme Court undertook to reexamine "what 'good cause' means in the context of I.C. § 19-3501," ultimately abandoning the *Russell* approach of wholesale incorporation of the *Barker* balancing test when enforcing the speedy trial right conferred by section 19-3501. *Clark*, 135 Idaho at 259, 16 P.3d at 935. The Court concluded the analysis should focus on the *reason* for the delay, stating that "good cause" means there was a substantial reason for the delay that rises to the level of a legal excuse. *Id.* at 260, 16 P.3d at 936. Such a determination could take into account the *Barker* factors, but only as surrounding circumstances, and the factors are important, if at all, only insofar as they bear on the sufficiency of the reason itself. *Clark*, 135 Idaho at 260, 16 P.3d at 936.

Recently in *Jacobson*, 153 Idaho 377, 283 P.3d 124, we took the opportunity to clarify our application of *Clark*, based on our reading of Idaho Supreme Court decisions on the issue, holding that where the reason for the delay is well defined, and the reason on its face clearly does, or clearly does not, constitute good cause, there is no occasion to consider the other *Barker* factors in assessing a claimed violation of section 19-3501. *Jacobson*, 153 Idaho at 380, 283 P.3d at 127. We concluded that resorting to the other *Barker* factors will only be appropriate primarily in close cases where, for example, there are multiple reasons for the delay attributable to both the State and the defendant or the sufficiency of the reason alleged to constitute good cause is genuinely subject to disagreement. *Jacobson*, 153 Idaho at 380, 283 P.3d at 127. Thus, in reviewing whether a defendant's statutory speedy trial right was violated, we focus first (and primarily) on whether there was good cause for the delay, whereas review of a defendant's constitutional speedy trial rights involves applying the *Barker* balancing test from the outset.

A.      **Statutory Speedy Trial Right**

Here, we first address Risdon's contention that his statutory speedy trial right was violated. It is undisputed that Risdon was not brought to trial within six months of the information being filed on February 16, 2010; thus, we must examine whether there existed good cause for the delay. In evaluating the reason for the delay, different weights are assigned to different reasons. *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005). Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. *Doggett v. United States*, 505 U.S. 647, 656 (1992); *Davis*, 141 Idaho at 837, 118 P.3d at 169. We attach great weight to considerations such as the State's need for time to collect witnesses, oppose pretrial motions, or locate the defendant in the event he or she goes into hiding. *Davis*,

4

141 Idaho at 837, 118 P.3d at 169. A valid reason, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531. However, there is an enormous difference between being inconvenienced and being unavailable. *Clark,* 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that attendance at trial would be burdensome. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169.

In denying Risdon's motion to dismiss on speedy trial grounds, the district court first found the DNA scientist's absence due to pregnancy complications constituted good cause for the first continuance since she was genuinely unavailable due to her medical condition. After examining additional information as to the lab's refusal to conduct retesting--specifically, a January 19, 2011, letter from the DNA scientist stating the DNA had not been retested due to lab "policy" and that she had returned to work in November 2010--the district court determined there was good cause for the second continuance stating "the action of the forensic lab was pursuant to its policy" and "was in good faith considering the limited resources of the lab and expense involved." The court further concluded that "with [the DNA scientist's] report being available to all parties, the Defendant was not unduly prejudiced by the delay occasioned by [the DNA scientist's] medical condition in light of Defendant's failure to claim any violation of speedy trial until just recently."

Initially, we note that in the context of Risdon's statutory speedy trial argument, the State only responds in a footnote to Risdon's contentions concerning the state lab's refusal to retest the DNA sample and the second continuance, contending Risdon "has made no attempt to show how this argument is relevant to the district court's July 28, 2010 finding of good cause to continue the trial until after August 16, 2010." The premise of the State's argument--that only the first continuance is relevant to a statutory speedy trial inquiry--is flawed. Not only has the State provided no authority for this proposition, but if we were to adopt such an approach, as long as the initial continuance was for good cause, a prosecutor and/or court would be free to subsequently delay a trial as long as they wished for any reason (subject only to constitutional speedy trial strictures). Common sense dictates that the reason or reasons for *all* trial delays, regardless of whether they arise after the six-month period runs, are relevant to a statutory speedy trial inquiry as to whether good cause existed for the delay in ultimately bringing a defendant to trial.

5

On appeal, Risdon concedes that if the DNA scientist was the only witness who could testify as to the DNA results, *i.e.*, if the DNA could not be retested and presented through the testimony of another lab employee and was essential to the State's case, a finding of good cause may have been proper. However, Risdon argues the second delay was not the result of true witness unavailability, but of the state lab's outright refusal to retest the DNA sample due to the lab's policy, even where the district court "ordered" retesting. The lab's actions, Risdon argues, are attributable to the State and amount to mere inconvenience as opposed to true unavailability.

We are not convinced, however, that the second continuance is as divorced from the initial continuance as Risdon argues. Rather, we view this as an instance of *continuing* witness unavailability that was interrupted by a legitimate, but ultimately failed, attempt to obtain retesting of the DNA samples in an effort to shorten the timeframe in which Risdon could be brought to trial. The fact that the attempt to circumvent the unavailability of this particular witness (initiated when the district court was apprised the witness would not be available until March 2011) did not succeed, does not render the initial good cause based on witness unavailability invalid. In short, the same witness was *still* unavailable--for the same reason--when the second continuance was granted. Although the DNA scientist's letter indicating she actually came back to work in November 2010 raises the question as to whether the State was as diligent as it could have been in promptly proceeding with trial as soon as the DNA scientist returned to work, there is no evidence the prosecution engaged in intentional dilatory action, given that it was apparently told the DNA scientist would not return until March.[1]

Finally, we note that the parties and the district court focused solely on the State's reasons for requesting the two continuances as the reasons for the delay in bringing Risdon to trial after the information was filed. However, the record reveals that earlier in the process Risdon himself stipulated multiple times to delays amounting to approximately two months, between the filing of the information and his arraignment, in anticipation of the completion of

---

[1]    A deliberate attempt to delay the trial in order to hamper the defense is weighed heavily against the State and would make relief virtually automatic. *Barker v. Wingo*, 407 U.S. 514, 531 (1972); *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005).

6

the DNA testing. It is clear that, at least initially, he was not interested in obtaining a speedy trial.[2]

Thus, we conclude that on balance, the primary reason for the post-information delay was true witness unavailability that was still present when the second continuance was granted, which was supplemented by Risdon's stipulation to a delay following the filing of the information. This clearly comprises the requisite good cause. That there was an ultimately failed attempt to hasten the process does not alter our conclusion.[3] Mindful of our decision in *Jacobson*, consideration of the remaining *Barker* factors in regard to Risdon's statutory claim is unnecessary. Risdon has failed to show his statutory speedy trial right was infringed.

## B. Constitutional Speedy Trial Rights

We now turn to consideration of Risdon's constitutional speedy trial claim, which, as we indicated above, is subject to the *Barker* balancing test. Specifically, in making this determination we examine: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530.

### 1. Length of the delay

The first factor, the length of the delay, is a triggering mechanism. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001); *State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007). Until there is some delay that is presumptively prejudicial, it is unnecessary to inquire into the other three factors. *Young*, 136 Idaho at 117, 29 P.3d at 953; *Lopez*, 144 Idaho at 352, 160 P.3d at 1287. *Barker's* balancing test creates no bright line boundaries, including as to the length of any delay. *Lopez*, 144 Idaho at 353, 160 P.3d at 1288. Rather, whether the length of delay will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S.

---

[2] In the present case, we are not concerned with the issue of whether Risdon waived his speedy trial claim; however, we can consider, in weighing these factors, Risdon's own behavior as a reason for the delay of his trial. *See State v. Johnson*, 119 Idaho 56, 59, 803 P.2d 557, 560 (Ct. App. 1990).

[3] Indeed, even if the state lab had immediately complied with the retest request communicated by the State on August 31, results would not have been available for approximately sixty to ninety days, edging ever closer to the January trial date set by the court after the second continuance.

at 530-31. The nature of the case is also of import in determining the period of delay that can be tolerated, for the period that is reasonable for prosecution of an ordinary street crime is considerably less than for a complex conspiracy charge. *Id.* at 531; *Lopez*, 144 Idaho at 353, 160 P.3d 1288.

Under the Sixth Amendment, the period of delay is measured from the date there is "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion*, 404 U.S. 307, 320 (1971). Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *Young*, 136 Idaho at 117, 29 P.3d at 953; *Lopez*, 144 Idaho at 352, 160 P.3d at 1287. Here, Risdon was arrested in October 2009, approximately three and a half months before the information was filed. Thus, for the purposes of both the United States and Idaho Constitutions, the earliest applicable date resulted in a delay of approximately fifteen months before the trial was scheduled to commence in January 2011. Given the nature of the crime charged in this case, this period is long enough to be presumptively prejudicial and, therefore, trigger an inquiry into whether it violated Risdon's constitutional rights. *See State v. Folk*, 151 Idaho 327, 333, 256 P.3d 735, 741 (2011) (holding that, considering the crime charged, a delay of one year was sufficient to trigger a constitutional speedy trial inquiry); *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996) (holding that a delay of over thirteen months was sufficient to trigger analysis in a complex conspiracy case).

**2.      Reasons for the delay**

We next turn to the reasons for the delay. Having extensively discussed the reasons for the *post-information* delay above, and coming to the conclusion that the primary reason for the delay was true witness unavailability that was still present when the second continuance was granted, which was supplemented by Risdon's stipulation to a delay following the filing of the information, we need not discuss them again here. However, where Risdon's arrest, not the filing of the information, triggered the running of the *constitutional* speedy trial period, we must discuss the reasons for any *pre-information* delay. The applicable time period amounted to approximately three and a half months--representing the time between Risdon's arrest in California on October 28, 2009, and the information being filed on February 16, 2010. Again, however, the record indicates that after making his initial appearance in Idaho on November 12,

Risdon stipulated three times prior to the information being filed to delay the preliminary hearing: twice because the parties were waiting for the DNA results and once because his counsel had a scheduling conflict. He eventually waived the preliminary hearing on February 10, after which he was released. Thus, it is clear from the record that the reasons for any delay occurring prior to the date the information was filed were stipulated to by Risdon and, therefore, not chargeable to the State. *See*, *e.g.*, *Lopez*, 144 Idaho at 354, 160 P.3d at 1289 (noting the defendant shared in responsibility for the delay because he initially indicated he would waive speedy trial and acquiesced to low-priority settings).

### 3. Assertion of speedy trial rights

Next, we turn to the nature of Risdon's assertion of his speedy trial rights. The defendant's assertion of his or her right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Barker*, 407 U.S. at 531-32. Failure to assert the right will make it difficult for a defendant to prove he or she was denied a speedy trial. *Id.* at 532. In *Barker*, the Court indicated the circumstances surrounding the defendant's failure to assert his right to a speedy trial demonstrated the defendant did not want a speedy trial. The Court concluded, "[T]he record strongly suggests that while [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Id.* at 535.

Here, the district court specifically found Risdon did not assert his speedy trial rights until his motion to dismiss was filed on January 12, 2011. On appeal, Risdon argues the district court failed to consider that he refused the court's invitation to waive speedy trial during the hearing on the State's first motion for continuance in July 2010 and contends that his refusal to waive his speedy trial rights at the time constituted an assertion of his speedy trial rights. As the State points out, however, the record reflects that during that hearing, at which Risdon was not present, the issue arose when the district court stated its concern that granting the continuance would create "a speedy trial issue, unless [Risdon was] waiving speedy trial," to which Risdon's counsel responded, "You're putting me in a real dilemma, Your Honor." The context of the conversation indicates counsel was conveying he *did not know* Risdon's wishes at the time and, therefore, did not have authority at that time to waive speedy trial rights on behalf of his client. To interpret this statement as an affirmative assertion of Risdon's speedy trial rights, especially where counsel expressed no other objection to the granting of the continuance, but rather

9

expressed he could not identify his client's position at the time, is not tenable. Thus, we conclude the district court did not err in finding Risdon's first assertion of his speedy trial rights occurred well after the expiration of the time limit, a factor that does not lend weight to Risdon's speedy trial argument. *See Lopez*, 144 Idaho at 353, 160 P.3d at 1288; *State v. Beck*, 128 Idaho 416, 421, 913 P.2d 1186, 1191 (Ct. App. 1996).

Indeed, as we discussed above, Risdon took dilatory actions early in the process that seemed to indicate he did not necessarily want a speedy trial. After his arrest and initial appearance, he entered into three stipulations delaying the preliminary hearing for approximately three months in anticipation of the DNA test results and, on one occasion, due to his counsel's scheduling conflict. After eventually waiving his preliminary hearing, he was charged by information and entered into an additional stipulation delaying his arraignment for over two months, again in anticipation of the completion of the DNA testing. *See State v. McNew*, 131 Idaho 268, 273, 954 P.2d 686, 691 (Ct. App. 1998) (concluding McNew's requests for continuances indicated he did not necessarily want a speedy trial). As the Supreme Court stated in *Barker*, "[B]arring extraordinary circumstances, [the Court] would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Barker*, 407 U.S. at 536.

### 4. Prejudice

Finally, we address what prejudice to the accused, if any, arose from the post-arrest delay. Prejudice is to be assessed in light of the interests the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility the defense will be impaired. *Id.*; *Young*, 136 Idaho at 118, 29 P.3d at 954; *Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90. The third of these is the most significant because a hindrance to adequate preparation of the defense skews the fairness of the entire system. *Barker*, 407 U.S. at 532; *Lopez*, 144 Idaho at 355, 160 P.3d at 1290. *See also State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

In finding good cause, the district court specifically found Risdon was not "unduly prejudiced by the delay" given that the DNA scientist's report was available to all parties and Risdon failed to claim any violation of speedy trial until January 2011. On appeal, Risdon argues that not only should this Court presume prejudice given the length of the delay, but that he has shown actual prejudice through his affidavit to the district court that described the anxiety

and concern he experienced, the loss of two jobs, becoming homeless, being forced to relocate from California to Texas and again losing a job, and the numerous trips he was required to take to Idaho to deal with the continuing proceedings.

Risdon was arrested on October 28, 2009, but stipulated to delays of his preliminary hearing. He was released and allowed to return to California on February 10, 2010. Thus, "oppressive" pretrial incarceration is not at issue in this case. *See Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90 (holding pretrial incarceration was not an issue where the defendant was released on recognizance almost four months after being arrested). In regard to Risdon's anxiety and concern, in denying Risdon's motion to dismiss on speedy trial grounds, the district court addressed Risdon's affidavit filed with his motion:

> I know that he is undergoing a good deal of stress. Anyone in those circumstances would, but I don't think that that is particularly attendant to the delay. It's the very nature of this. I know he has had to come back and forth, but it's his choice to go somewhere else. We tried to be patient with him and to facilitate where we could his attendance. We will continue to do so as much as possible under the circumstances, but anyone who faces this kind of a charge and the consequences that it brings has to be stressed. . . . I don't think that's a reason to dismiss the case. Otherwise, we would dismiss a lot of cases. Almost all criminal defendants are stressed in one way or another. . . . People are stressed because they are under the gun. We will get through it.

Indeed, anxiety by itself is generally insufficient to support a claim of a speedy trial violation. *Young*, 136 Idaho at 118, 29 P.3d at 954; *State v. Crockett*, 151 Idaho 674, 678, 263 P.3d 139, 143 (Ct. App. 2011). Additionally, as the State points out, although Risdon asserts several hardships due to the delay, he himself requested and/or stipulated to approximately five months delay and chose to leave Idaho, rendering his assertions somewhat less convincing. As to the third and most important consideration, Risdon has not asserted any hindrance to his defense due to the delay. Overall, the prejudice factor in this case does not weigh in favor of dismissal.

As discussed above, the reasons for the delay in bringing Risdon to trial within the constitutional speedy trial period include his multiple stipulations to several months of both pre- and post-information delay waiting for the results of the DNA test, which are clearly chargeable to him, and the continued unavailability of the DNA scientist due to medical issues, which we found constituted good cause for the delay. In addition, weighing against Risdon's claim of a constitutional speedy trial violation is the fact he did not assert his speedy trial rights until approximately fifteen months after he was arrested. *See Clark*, 135 Idaho at 260, 16 P.3d at 936.

11

Finally, although he may have suffered some hardship as a result of the pending charges, as we discussed above, the overall circumstances weigh against a speedy trial violation, as there is no issue of oppressive pretrial incarceration, it was his choice to leave the state while charges were pending, he had not shown concern for delays while stipulating numerous times to await the DNA test results and accommodate his counsel's schedule, and he has asserted no prejudice to his ability to defend himself against the charges as a result of the delay. Considering the four *Barker* factors as a whole, Risdon has failed to carry his burden to show his constitutional speedy trial rights were violated.

### III.

### CONCLUSION

Risdon has not shown that either his constitutional or statutory speedy trial rights were violated. Accordingly, we affirm his judgment of conviction for statutory rape.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**