IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39659

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 739 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 7, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JORGE FERREIRA TINOCO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Bradly S Ford, District Judge.

Judgment of conviction for trafficking methamphetamine and delivery of a controlled substance, affirmed.

Nevin, Benjamin, McKay & Bartlett, LLP; Robyn Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jorge Ferreira Tinoco appeals from his conviction for trafficking methamphetamine, Idaho Code § 37-2732B(a)(4), and delivery of a controlled substance, I.C. § 37-2732(a)(1)(A).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2011, an undercover officer contacted Tinoco asking to purchase methamphetamine. Tinoco called the undercover officer in March, indicating three pounds had become available. Tinoco, along with this brother, had transported the methamphetamine from California to Idaho. The undercover officer met with Tinoco for a controlled buy at a local truck stop. Tinoco provided a sample of the methamphetamine and had the undercover officer follow him to his nephew's apartment where the drug transaction was to occur. Officers set up surveillance at the apartment and obtained a search warrant. The officers found approximately

1

three pounds of methamphetamine in a storage shed at the apartment. Tinoco and his brother were arrested on March 20, 2011.

Tinoco was arraigned on April 15, 2011, at which time he asserted his right to a speedy trial. In July 2011, the court granted the State's motion to consolidate the brothers' trials. On September 20, 2011, before the jury was seated, defense counsel alleged that the State had improperly used its peremptory challenges to eliminate all Hispanics from the jury. The court informed counsel the *Batson*[1] challenge would be addressed, but that jury selection would be handled first. After the jury was seated, the defense again raised the *Batson* issue. The State responded that the *Batson* issue was waived because the jury was already seated. The court agreed, and without determining if the State violated *Batson*, the court denied the motion. However, the court later granted a mistrial in the interests of justice since the *Batson* issue was not timely taken up. The court reset the trial for November 1, 2011. On October 24, 2011, Tinoco moved to dismiss alleging his right to a speedy trial was violated, which the court denied. After a three-day jury trial, Tinoco was convicted for trafficking and delivering methamphetamine.

## II.

## ANALYSIS

Tinoco alleges his right to a speedy trial was violated under I.C. § 19-3501, and under the United States and Idaho Constitutions. Whether there was an infringement of a defendant's right to a speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id*.

### A.     Idaho Code § 19-3501

Tinoco alleges I.C. § 19-3501 was violated because he was not brought to trial within six months and that there was no good cause to excuse the delay. Idaho Code § 19-3501 requires in relevant part:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
> . . . .

---

[1]     *Batson v. Kentucky*, 476 U.S. 79 (1986).

(3) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the defendant was arraigned before the court in which the indictment is found.

I.C. § 19-3501(3).

The State asserts that the statute was satisfied because the trial began; thus, Tinoco was "brought to trial." The district court found that despite the resulting mistrial, Tinoco was brought to trial when the jury was sworn on September 20, 2011. Tinoco acknowledges that the clear and plain language of I.C. § 19-3501 does not implicate the statute in the case of a retrial after a successful appeal. *See State v. Avelar*, 129 Idaho 700, 702, 931 P.2d 1218, 1220 (1997) (holding I.C. § 19-3501 does not apply to retrials after an appeal). Instead, Tinoco claims that a mistrial is distinguishable from a case that is retried after an appeal because in a case involving a mistrial, a verdict is not rendered. Tinoco concludes that without a verdict, a defendant is not "brought to trial."

In *Avelar*, the Idaho Supreme Court determined that defendants awaiting retrial after an appeal do not have a statutory right under I.C. § 19-3501 because they are not mentioned in the terms of the statute. *Avelar*, 129 Idaho at 702, 931 P.2d at 1220. Like a successful appeal, the result of a mistrial is to require a new trial. *See* Idaho Criminal Rule 29.1 ("At any time during a trial, the court may declare a mistrial and order a new trial . . . ."). Additionally, there are endless scenarios that might arise during a trial that could result in a delay past the statutory period before a verdict is rendered, including: where a jury is unable to reach a verdict and a mistrial is declared; mid-trial juror misconduct; unexpected illness of jury members, attorneys, or the judge that lead to trial delays; or, a trial set near the deadline that runs over due to unforeseeable delays, such as extended jury deliberations. However, we need not decide the exact moment when a defendant is "brought to trial" because good cause existed to reset Tinoco's trial beyond the six-month period.

The State bears the burden to demonstrate good cause existed for failure to bring a defendant to trial within the statutory six-month period. *Clark*, 135 Idaho at 258, 16 P.3d at 934; *State v. Risdon*, 154 Idaho 244, 247, 296 P.3d 1091, 1094 (Ct. App. 2012). "[G]ood cause means that there is a substantial reason that rises to the level of a legal excuse for the delay." *Clark*, 135 Idaho at 260, 16 P.3d at 936. The "question of whether legal excuse has been shown is a matter for judicial determination upon the facts and circumstances of each case." *Id.* Courts formerly

applied the constitutional factors from *Barker v. Wingo*, 407 U.S. 514 (1972), in analyzing I.C. § 19-3501. *See State v. Russell*, 108 Idaho 58, 62, 696 P.2d 909, 913 (1985). The *Barker* factors include: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *Risdon*, 154 Idaho at 249, 296 P.3d at 1096 (citing *Barker*, 407 U.S. at 530). However, the Idaho Supreme Court abandoned this approach, favoring instead the reason for delay. *See Clark*, 135 Idaho at 259-60, 16 P.3d at 935-36. Initially, whether good cause exists is left to the discretion of the trial court, but this discretion is not unbridled and on appeal we will independently review the lower court's decision. *Id.* at 260, 16 P.3d at 936.

Where the reason for delay is well defined, and that reason, on its face, clearly does or does not constitute good cause, analysis of the other *Barker* factors is unnecessary. *State v. Jacobson*, 153 Idaho 377, 380, 283 P.3d 124, 127 (Ct. App. 2012); *see Clark*, 135 Idaho at 260-61, 16 P.3d at 936-37 (finding without further analysis that a witness's mere inconvenience, as opposed to true unavailability, was insufficient to constitute a legal excuse); *see also State v. Young*, 136 Idaho 113, 116, 29 P.3d 949, 952 (2001) (finding, without resorting to other factors, a valid legal excuse existed when the delay was caused by a good faith interlocutory appeal by the State). On the other hand, "in close cases as where, for example, there are multiple reasons for the delay attributable to both the State and the defendant or the sufficiency of the reason to constitute 'good cause' is genuinely subject to disagreement," the court may resort to the other *Barker* factors in determining if good cause existed to excuse a delay. *Jacobson*, 153 Idaho at 380, 283 P.3d at 127. When implicated, the *Barker* factors are relevant as surrounding circumstances, but only insofar as they bear on the sufficiency of the reason for the delay. *Risdon*, 154 Idaho at 247, 296 P.3d at 1094 (citing *Clark*, 135 Idaho at 260, 16 P.3d at 936).

A court negligently selecting a trial date outside the speedy trial limits, *Jacobson*, 153 Idaho at 380, 283 P.3d at 127; or a court's overcrowded trial calendar, *Clark*, 135 Idaho at 261, 16 P.3d at 937, does not justify a delay past the statutory period. This is because it is the court and the State that bear the responsibility of ensuring a defendant is brought to trial in the statutory period. *Jacobson*, 153 Idaho at 380 n.2, 283 P.3d at 127 n.2 (citing *State v. Lopez*, 144 Idaho 349, 354, 160 P.3d 1284, 1289 (Ct. App. 2007)). Whereas a valid reason, such as a missing witness, should serve to justify an appropriate delay. *Risdon*, 154 Idaho at 248, 296 P.3d at 1095 (citing *Barker*, 407 U.S. at 531).

In *State v. Livas*, 147 Idaho 547, 211 P.3d 792, (Ct. App. 2009), this Court found good cause existed where the delays were a result of the defendant's motions to challenge the admissibility of evidence, a motion to suppress, and a motion for reconsideration. *Id*. at 551, 211 P.3d at 796. This was because "[o]ur speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable for reasons that include the parties' need to pursue or oppose important pretrial motions." *Id.* Similarly, in *Young*, the Idaho Supreme Court addressed a speedy trial delay that resulted from the State appealing a district court's motion in limine order. The Idaho Supreme Court found good cause existed to warrant a delay because the issue appealed was important to the case, the State acted in good faith, and the appeal was not frivolous. *Young*, 136 Idaho at 116, 29 P.3d at 952.

Here, Tinoco asserts that the reason for the delay was that "the district court misled counsel as to when the *Batson* challenge could be heard, which ultimately required the district court to declare a mistrial." Tinoco characterizes the mistrial as resulting from the trial court's "negligence," and he argues this is analogous to the insufficient legal excuses of miscalculating the speedy trial period or a congested court calendar. Tinoco ignores that the district court's order granting the mistrial stems from his motion requesting a mistrial on the *Batson* issue. The district court ultimately provided Tinoco his requested relief in the interest of justice. The court ordered a mistrial to preserve Tinoco's equal protection right to ensure the jury was properly seated and to avoid a later appeal of the *Batson* issue which, at best, would have required a new trial. The district court granted Tinoco's requested relief, a mistrial, and then rescheduled the trial only eighteen days past the statutory deadline. Like important pretrial challenges, a defendant raising important issues during trial, which leads to a trial delay past the six-month period, rises to the level of legal excuse.[2]

Additionally, where "the delay has been a short one or if the defendant has not been prejudiced, a weaker reason for the delay in bringing the defendant to trial will constitute good cause for purposes of I.C. § 19-3501." *State v. Hernandez*, 136 Idaho 8, 11, 27 P.3d 417, 420 (Ct. App. 2010) (considering an eleven-day delay without any showing of prejudice in finding good cause existed). Tinoco was brought to trial only eighteen days after the statutory period and, as explained in part B, Tinoco suffered no prejudice in preparing his defense from the

---

[2] In addition, we do not agree that the defense bore no responsibility in failing, on the record, to ensure completion of the *Batson* challenge prior to the seating of the jury.

limited delay.  We conclude that the district court, granting Tinoco's requested relief for a mistrial in the interest of justice, acted as good cause to allow Tinoco's rescheduled trial to occur outside the I.C. § 19-3501 six-month period.

**B.    Sixth Amendment and Art. I, § 13 of the Idaho Constitution**

Tinoco also asserts that even if there was compliance with I.C. § 19-3501, the delay in retrying him violated his speedy trial rights under the Sixth Amendment to the United States Constitution and Art. I, § 13 of the Idaho Constitution.  To determine if there is a speedy trial violation under either the United States or Idaho Constitutions, the court employs the *Barker* balancing test.  *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996). The court weighs:  (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant.  *Risdon*, 154 Idaho at 249, 296 P.3d at 1096 (citing *Barker*, 407 U.S. at 530).

The length of delay is a triggering mechanism.  Unless there is actual prejudice, or the delay is presumptively prejudicial, it is unnecessary to inquire into the other three factors.  *State v. Folk*, 151 Idaho 327, 332-33, 256 P.3d 735, 740-41 (2011).  Whether the delay is presumptively prejudicial depends on the circumstances, nature, and complexity of each case. *Id.*  For example, the delay tolerated in the prosecution of an ordinary street crime is considerably less than what is tolerated in a complex conspiracy case.  *Risdon*, 154 Idaho at 250, 296 P.3d at 1097.  Generally, a delay is not presumptively prejudicial until it approaches one year.  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see State v. Talmage*, 104 Idaho 249, 252, 658 P.2d 920, 923 (1983) (seven and one-half-month delay between initial trial and retrial was sufficient to trigger scrutiny); *Holtslander*, 102 Idaho at 310, 629 P.2d at 706 (nine months was presumptively prejudicial); *Folk*, 151 Idaho at 333, 256 P.3d at 741 (approximately one year enough to trigger analysis); *Rodriquez-Perez*, 129 Idaho at 34, 921 P.2d 211 (thirteen months sufficient to trigger factor analysis); *Lopez*, 144 Idaho at 353, 160 P.3d at 1288 (Ct. App. 2007) (seventeen-month delay was presumptively prejudicial); *State v. McNew*, 131 Idaho 268, 271, 954 P.2d 686, 689 (Ct. App. 1998) (twenty-one months sufficient for review).

Under the Sixth Amendment, the length of delay is measured from the date of the indictment, information, or arrest.  *United States v. Marion*, 404 U.S. 307, 320 (1971).  Under the Idaho Constitution, the length of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first.  *Young*, 136 Idaho at 117, 29 P.3d at 953.  We

6

will assume for purposes of Tinoco's appeal, that a cumulative approach applies which encompasses the time before and after the mistrial.[3]   Officers arrested Tinoco on March 20, 2011.  His initial trial commenced on September 20, 2011, which resulted in a mistrial after the jury had been seated.  Tinoco's second trial began on November 1, 2011.  Assuming the cumulative approach, from arrest to retrial was a little over seven and one-half months.

At the hearing on the motion to dismiss, the trial court described the case as complicated. We agree.  Tinoco's jury trial was originally scheduled for July 6, 2011, but was reset for August 16, 2011, because the grand jury transcript had not yet been prepared.  The trial court then granted a motion to consolidate Tinoco's case with his brother's case, which led to resetting the trial for September 20, 2011.  On August 8, 2011, the court denied Tinoco's brother's motion to sever the trial.  During jury selection, Tinoco alleged the State had improperly used its peremptory challenges in violation of *Batson*.  This motion was heard, but was denied because the jury had already been seated.  Due to the confusion as to when the *Batson* issue would be addressed, the court granted a mistrial.  The trial was then rescheduled for November 1, 2011.

Beyond the procedural circumstances, trafficking and delivery are charges well beyond a street-level offense.  The State alleged Tinoco transported methamphetamine from California to Idaho with his brother.  The State employed the use of an undercover officer to communicate with Tinoco and arranged for a controlled buy.  Multiple officers were involved in surveillance of the apartment where the drugs were found, and a search warrant ultimately led to the discovery of approximately three pounds of methamphetamine.  The State presented nine witnesses and numerous exhibits during the three-day jury trial.  Considering the circumstances, nature, and complexity of Tinoco's case, a seven and one-half-month delay is not presumptively prejudicial.

Even assuming that seven and one-half months is presumptively prejudicial, the *Barker* balancing test weighs against a speedy trial violation.  The first factor--length of delay--weighs heavily in favor of the State.  Tinoco's trial concluded within seven and one-half months of his arrest.  Considering the complexity of the case and that the trial initially started within the six-month statutory requirement, the delay was minimal.  The reason for delay also weighs against

---

[3]     *Compare Icgoren v. State*, 653 A.2d 972, 978 (Md. App. 1995) (holding proper calculation for speedy trial is to restart after a mistrial), with *State v. Manley*, 220 S.W.3d 116, 122 (Tex. App. 2007) (rejecting the argument that speedy trial restarts with a mistrial).

Tinoco. As discussed in part A, *supra*, the reason for the delay resulted from Tinoco requesting a mistrial, which was ultimately granted. The court granting a mistrial in the interest of justice is not only "good cause," but weighs against finding a constitutional violation. Next, the State concedes that Tinoco asserted his speedy trial right at his arraignment. The trial court also found that Tinoco stood on his speedy trial rights throughout the proceedings. Thus, this factor weighs in favor of Tinoco.

Lastly, the nature and extent of prejudice is the most important of the *Barker* factors. *Lopez*, 144 Idaho at 354, 160 P.3d at 1289. Prejudice is to be assessed in light of the interests the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility the defense will be impaired. *Risdon*, 154 Idaho at 251, 296 P.3d at 1098. "The third of these is the most significant because a hindrance to adequate preparation of the defense skews the fairness of the entire system." *Id.* (citing *Barker*, 407 U.S. at 532).

Tinoco asserts he suffered prejudice in the form of pretrial incarceration, anxiety while awaiting trial, and that the State was granted additional time to put together its case which allowed fingerprint evidence to be available for Tinoco's second trial. The pretrial incarceration time, extended by a short time, did not rise to the level of being oppressive and Tinoco has also failed to show he faced anxiety beyond the normal levels that any incarcerated defendant faces while awaiting trial. Finally, Tinoco's ability to adequately prepare for trial was not prejudiced by the State's fingerprint analysis being ready for the second trial. Relevant prejudice is the type that inhibits a defendant's ability to adequately prepare a defense, not the State's ability to prepare the prosecution.[4] The limited prejudice from incarceration and anxiety is insufficient to outweigh the speed in which Tinoco was brought to trial. Considering the four *Barker* factors as a whole, a seven and one-half-month delay did not violate Tinoco's constitutional speedy trial rights.

---

[4] However, prejudice exists if the State intentionally delays the trial in order to hamper the defense or gain a tactical advantage which is not alleged here. *See Barker*, 407 U.S. at 531 n.32.

### III.
### CONCLUSION

Tinoco's statutory and constitutional speedy trial rights were not violated.  We affirm Tinoco's judgment of conviction for trafficking and delivery of a controlled substance.

Judge LANSING and Judge MELANSON **CONCUR.**