921 P.2d 206

STATE of Idaho, Plaintiff–Respondent,

v.

**Daniel RODRIQUEZ–PEREZ,
Defendant–Appellant.**

No. 21447.

Court of Appeals of Idaho.

July 10, 1996.

Petition for Review Denied Aug. 28, 1996.

LANSING, Judge.

This appeal presents two issues. First, we must determine whether the State engages in vindictive prosecution, in violation of the

Fourteenth Amendment, if a prosecutor carries out a threat made during plea negotiations to obtain a new indictment on a more serious charge if the defendant will not plead guilty to the original charge. The second issue is whether the defendant was denied his statutory and constitutional rights to a speedy trial when a period of more than thirteen months elapsed between his date of arrest and his trial date.

## I.

### THE DUE PROCESS CLAUSE WAS NOT VIOLATED WHEN THE PROSECUTOR CARRIED OUT HIS THREAT, MADE DURING PLEA NEGOTIATIONS, TO INDICT THE DEFENDANT ON A MORE SERIOUS OFFENSE.

In March 1993, Daniel Rodriquez–Perez was indicted for conspiracy to deliver a controlled substance (heroin) in violation of I.C. §§ 37–2732(a)(1)(A) and 37–2732(f) ("the delivery charge"). In late December 1993, about two weeks before the date set for the trial on that charge, the prosecutor informed Rodriquez–Perez that if he did not plead guilty, the State would dismiss that case and proceed with a new indictment against him for conspiracy to traffic in heroin. Rodriquez–Perez declined to plead guilty to the delivery charge and, in accordance with his announced intent, the prosecutor moved for dismissal of the delivery charge. This motion was granted, and shortly thereafter a grand jury handed down a new indictment against Rodriquez–Perez on the charge of trafficking in more than twenty-eight grams of heroin, I.C. §§ 37–2732B(a)(5)(C) and 2732B(b) ("the trafficking charge"). The delivery charge, upon which Rodriquez–Perez was initially indicted, carried a maximum sentence of life imprisonment, I.C. § 37–2732(a)(1)(A), but was not subject to any mandatory minimum sentence. The trafficking charge, on the other hand, not only carried a potential maximum sentence of life imprisonment but, at the time of Rodriquez–Perez's reindictment, was subject to a minimum term of incarceration of twenty-five

years. I.C. § 37–2732B(a)(5)(C) (1992).[1] In addition, the trafficking offense carried a minimum fine of $25,000, I.C. § 37–2732B(a)(5)(C), and was subject to a maximum fine of $100,000, I.C. § 37–2732B(a)(5)(D), while the delivery charge carried no minimum fine and was subject to a maximum fine of $25,000. I.C. § 37–2732(a)(1)(A).

Rodriquez–Perez moved to dismiss the trafficking case on the ground that it amounted to vindictive prosecution in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He asserted that the prosecutor's sole purpose in pursuing the trafficking charge, which would subject Rodriquez–Perez to a greater punishment, was to penalize him for exercising his right to a jury trial in the delivery case. The district court denied the motion and, following a jury trial, Rodriquez–Perez was convicted of conspiracy to traffic in heroin. On appeal, he challenges the denial of his motion to dismiss based upon the Fourteenth Amendment.[2]

■ The Fourteenth Amendment's Due Process Clause prohibits the government from punishing a person for doing what the law plainly allows him to do. *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Id.* In *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), the United States Supreme Court held that the Due Process Clause "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." The Supreme Court has likewise found it violative of due process for a prosecutor to reindict a convict-

ed misdemeanant on a felony charge after the defendant filed a notice of appeal from his conviction, because this circumstance posed a "realistic likelihood of vindictiveness." *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).

In the present case, the prosecutor candidly explained to the trial court why he had sought a new indictment against Rodriquez–Perez for the more serious offense:

I don't want to pretend to the court, and I won't pretend to the court that the decision to file trafficking charges was solely a product of new evidence.

I'll be candid with the court when it got to the point that we were looking at going to trial, it was the state's position that if we went to trial in this case with the burden and the resources to the prosecution of this defense [sic], that the defendant would be facing the most serious charges that were available to the state upon which probable cause can be found and that, of course, is the trafficking charge in this case.

So to the extent that there is an allegation that this is a product of the defendant's decision to reject the state's offer of the opportunity to plead guilty to conspiracy to deliver heroin and go to trial, that allegation has a factual basis.

Rodriquez–Perez contends that this explanation from the prosecutor establishes prosecutorial vindictiveness because the prosecutor admitted that he sought the trafficking indictment in response to Rodriquez–Perez's refusal to plead guilty.

■ Rodriquez–Perez's argument has been rejected by the United States Supreme Court in a case presenting very similar facts. In *Bordenkircher v. Hayes, supra,* the defendant asserted that the prosecution penalized his decision to plead not guilty by adding a habitual criminal charge, which subjected the

1. After the motion to dismiss was filed, the Idaho Supreme Court, in *State v. Sarabia,* 125 Idaho 815, 816–17, 875 P.2d 227, 228–29 (1994), found the mandatory minimum sentencing provisions of I.C. § 37–2732B unconstitutional. The subsection of the statute providing the basis of the finding of unconstitutionality, I.C. § 37–2732B(a)(8), has since been repealed. 1995 Idaho Sess. Laws, ch. 103, pp. 331, 334. The legis-

lature also amended I.C. § 37–2732B(a)(5)(c) to decrease the mandatory minimum sentence from twenty-five to fifteen years. 1995 Idaho Sess. Laws, ch. 103, pp. 331, 333.

2. Rodriquez–Perez does not assert that greater protection is afforded under the Due Process Clause of Art. I, § 13 of the Idaho Constitution.

defendant to a mandatory life sentence. There, as here, the prosecutor had told the defendant during plea bargaining discussions that if the defendant would not plead guilty on the original charge and thereby avoid the necessity of a trial, the prosecutor intended to return to the grand jury and ask for a new indictment. *Id.* at 358, 98 S.Ct. at 665. On those facts, the Supreme Court found no due process violation. The Court stated:

> [I]n the "give-and take" of plea bargaining, there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

. . . .

While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

. . . .

There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise. We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.

*Id.* at 363–65, 98 S.Ct. at 668–669 (citation, quotation marks and footnote omitted). *See also United States v. Garza–Juarez,* 992 F.2d

896, 906 (9th Cir.1993), *cert. denied,* 510 U.S. 1058, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994) (the threat that more serious charges will be brought if a defendant does not plead guilty to a charged offense is "permissible under *Bordenkircher.*"); *State v. Storm,* 123 Idaho 228, 231–33, 846 P.2d 230, 233–35 (Ct.App. 1993) (in reliance upon the reasoning of *Bordenkircher,* holding that a prosecutor's threat to request a habitual offender enhancement if the defendant would not plead guilty did not render the resulting guilty plea constitutionally involuntary or coerced).

Rodriquez–Perez has not shown that his circumstance is distinguishable in any way from *Bordenkircher.* Therefore, we hold that his due process rights under the Fourteenth Amendment were not infringed when the prosecutor carried out his threat to indict Rodriquez–Perez for trafficking in heroin after Rodriquez–Perez refused to plead guilty to the delivery charge. The district court's denial of the motion to dismiss the trafficking charge on the ground of prosecutorial vindictiveness is affirmed.

## II.

### RODRIQUEZ–PEREZ WAS NOT DENIED A SPEEDY TRIAL.

On April 28, 1994, Rodriquez–Perez moved for dismissal of the trafficking charge on the grounds that he was deprived of his rights to a speedy trial as guaranteed by I.C. § 19–3501, the Sixth Amendment to the United States Constitution, and Art. I, § 13 of the Idaho Constitution. The district court denied the motion, and Rodriquez–Perez challenges that decision on appeal. Because the analysis of speedy trial rights under I.C. § 19–3501 is closely related to and based upon the analysis applied to constitutional speedy trial guarantees, we will consider first Rodriquez–Perez's constitutional claims before addressing his rights under the statute.

### A. The Sixth Amendment and Article I, § 13 of the Idaho Constitution

 Whether Rodriquez–Perez was denied a constitutional right to a speedy trial is a mixed question of law and fact. *State v.*

*Wavrick,* 123 Idaho 83, 86, 844 P.2d 712, 715 (Ct.App.1992). On appeal, when faced with mixed questions of law and fact, we defer to facts found upon substantial evidence, but we freely review the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found. *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *Wavrick,* 123 Idaho at 86, 844 P.2d at 715; *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988).

■ In determining whether a defendant's Sixth Amendment right to a speedy trial has been denied, an ad hoc balancing process is employed in which the conduct of both the prosecution and the defense are weighed. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The court must consider four factors: (1) the length of the delay; (2) the reason or reasons for the delay; (3) the defendant's assertion or non-assertion of speedy trial rights; and (4) the prejudice or lack of prejudice to the defendant occasioned by the delay. *Id.* These same factors are to be weighed in determining whether the right to a speedy trial under Art. I, § 13 of the Idaho Constitution has been violated. *State v. Russell,* 108 Idaho 58, 62, 696 P.2d 909, 913 (1985). We will evaluate each of these factors as they apply in the present case.

### 1. The length of the delay

■ The right to a speedy trial under the Sixth Amendment is engaged when a defendant becomes an "accused", i.e. when formal criminal charges are filed or when the defendant is arrested, whichever comes first. *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). The same holds true for the speedy trial protections of our State Constitution. *State v. Holtslander,* 102 Idaho 306, 310, 629 P.2d 702, 706 (1981). Here, in considering the length of the delay, the district court utilized as the starting point the date of Rodriquez–Perez's initial arrest on the delivery charge, not the date of his reindictment on the trafficking charge. As the State does not contend the district court erred in utilizing this date, for purposes of review we will assume, without deciding, that the arrest date is the

appropriate starting date for evaluating the length of the delay in bringing Rodriquez–Perez to trial.

■ Rodriquez–Perez was arrested on the delivery charge on March 23, 1993. His motion to dismiss for violation of his constitutional rights to a speedy trial was filed on April 28, 1994, and his trial was set to commence on May 9, 1994. The length of this delay, over thirteen months, is sufficient to trigger judicial scrutiny. *See State v. Holtslander,* 102 Idaho 306, 309, 629 P.2d 702, 705 (1981). It is to be noted, however, that the length of delay that is constitutionally permissible depends, in part, upon the nature of the case. The United States Supreme Court observed that, "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192. Here, the charge against Rodriquez–Perez was a complex one, involving proof of a conspiracy to engage in drug trafficking.

### 2. Reasons for the delay

The circumstances that led to the lapse of more than thirteen months between Rodriquez–Perez's arrest and his trial were outlined by the district court as follows:

The defendant and his co-defendants originally were charged with various drug crimes in a complaint filed in Ada County Case No. M932306 on March 24, 1993. The defendant was arrested the same day. A superseding indictment was returned by the Grand Jury on March 25, 1993, in Ada County Case No. HCR 20000. The defendant has been in custody since March 24th. . . .

The charge against the defendant was conspiracy to deliver heroin. The defendant, then represented by Mr. Rosenheim, was arraigned on March 31, 1993, by Judge Schwartzman. The arraignment was continued until April 14th so the defendant could decide how to plead. On April 14th the defendant entered a plea of not guilty and the case was set for jury trial for August 9th.

On July 14th the state filed a motion to compel discovery from the defendant, alleging that it had received no response to its request for discovery. On July 16th the defendant filed a motion to suppress. On July 22nd, the defendant filed a discovery response indicating, among other things, that he did not intend to call any witnesses other than those already named as potential witnesses by the state.

The court was unable to hear the motion to suppress before the trial date, and on August 9th Judge Schwartzman was ill. The case was re-set for a suppression hearing on August 10th. The suppression hearing took up most of August 10th. After calling three witnesses, Mr. Rosenheim asked for an additional time to present more evidence. He also asked for a new trial date. After considering his calendar and the anticipated time needed to resolve the suppression issues, Judge Schwartzman re-set the trial for January 3, 1994. Neither the defendant nor his attorney objected to the new date.

During the calendaring discussion, Judge Schwartzman suggested that the defendant effectively waived his statutory speedy trial rights by filing his summary judgment motion so close to the time set for trial. Mr. Rosenheim commented that he could not have filed his motion sooner, because the state did not provide him with photographs requested in April until July. The prosecutor noted that the defendant never filed a motion to compel discovery. (This court also notes that the defendant was equally tardy in responding to discovery requests). The defendant's explanation for the delay in filing his motion to suppress is not persuasive, since he easily could have filed the motion at a far earlier stage of the proceedings and thereafter subpoenaed or compelled production of the photographs.

The suppression hearing was continued until August 31st for presentation of additional evidence by the defendant.

. . . .

The defendant presented additional evidence on the motion to suppress on August 31st, and the hearing was continued until September 9th for still more evidence. The defendant completed his presentation of evidence on September 9th and requested two weeks to file a brief. The motion was granted. The defendant lodged his brief on October 7, and the state lodged its brief on November 23rd.

On December 16th defense counsel filed a motion to withdraw supported by an affidavit that differences had developed making it impossible to effectively advocate for the defendant.

On December 20, the court orally announced its decision on the motion to suppress. Judge Schwartzman denied most of the motion but did suppress certain evidence on non-constitutional grounds. At the hearing defense counsel reiterated the motion to withdraw. Judge Schwartzman indicated that he would hold the motion "in abeyance until the morning of January the 3rd and we'll deal with it at that point and see where all the dust settles in this case, . . ."

Prior to January 3rd, the prosecutor apparently notified the court and defense counsel that he intended to dismiss the pending indictment and file new charges. Relying on the prosecutor's statement, on January 3rd defense counsel withdrew his motion to withdraw but stated that he would not represent the defendant when new charges were filed. The prosecutor moved to dismiss the indictment against the defendant without prejudice, indicating that his office would file a trafficking charge instead. The prosecutor stated that his reasons for the motion related to factual inaccuracies in the indictment revealed by the suppression hearing and to the restricted scope and breadth of the charging language in the existing indictment.

Judge Schwartzman insisted that a complete record be made. He specifically asked for Mr. Rosenheim's comments, and Mr. Rosenheim stated on the record that there was no objection to the motion to dismiss. Judge Schwartzman noted that the case was exceedingly complex and convoluted and that the suppression issues

had been resolved only shortly before the projected trial date. He granted the motion to dismiss without prejudice and ordered the defendant released unless a new charge was filed.

The defendant never was released, because the state promptly filed a new charge of trafficking. The Grand Jury returned an indictment charging the defendant with conspiracy to traffic in heroin in excess of 28 grams in Ada County Case No. HCR 20997 on January 13, 1994. The defendant, now represented by the public defender, was arraigned on January 14th. At the defendant's request arraignment was continued until February 2nd for entry of a plea.

. . . .

On February 11th the defendant appeared with Mr. Morris, who had been retained for the defendant through the public defender's office because of a potential conflict of interest. The defendant entered a plea of not guilty and requested as early a trial setting as possible. The case was set for trial on May 2nd, the first available date on the court's calendar. The defendant's trial was the seventh criminal case set for that day on the trial judge's calendar, but it was given priority because of the defendant's custodial status.

Sometime in April Mr. Morris realized that his office receptionist would be called as a material witness by the state. He withdrew and Mr. Matthews entered the case on behalf of the defendant. He asked for a brief continuance to acquaint himself with the prior proceedings. The court vacated a civil case set for trial on May 9th and re-set the defendant's case for that date. The court heard Mr. Matthews's pre-trial motions on May 2nd, including the motion to dismiss for violation of speedy trial rights, which had been filed on April 28th. The trial began as scheduled on May 9th and ended on May 12th. The defendant rested his case without calling any witnesses. The jury returned a verdict finding the defendant guilty of conspiracy to traffic in heroin in a quantity of more than two grams but less than 7

grams. He was sentenced to a ten year term with three years fixed and was given credit against the fixed portion of the sentence for pre-judgment incarceration from March 24, 1993.

Based upon this procedural history, the district court made the following findings with regard to the reasons for the delay:

The defendant was granted from March 31 to April 14, 1993, to decide how to plead. This delay was not attributable to the state.

On April 14 the court set the case for trial beginning August 9, 1993. The delay from April 14 through August 9th was attributable to Judge Schwartzman's calendaring decision and the time necessary for both sides to prepare for trial, all of which were relatively neutral factors.

The inability to proceed to trial on August 9 was caused in large measure by the defendant's delay in filing his motion to suppress. As noted previously, the court does not believe that the delay was necessitated to a significant extent by the failure of the state promptly to provide certain photographs to the defendant. The delay from August 9th to the new trial date of January 3rd consequently was attributable in substantial part to the defendant's conduct and to a lesser extent to the state's conduct. In addition, the delay was attributable to Judge Schwartzman's congested calendar and his consequent inability to provide an earlier amended trial setting, two relatively neutral factors.

The delay from January 3rd through May 2nd was due in substantial measure to the state's decision to refile. Nevertheless, the reasons, as stated by the prosecutor on the record, were understandable. This court recognizes, as did Judge Schwartzman, that the case involved a relatively complex drug conspiracy and not just a routine drug bust.

There also were other factors contributing to the delay from January 3rd to May 9th. It is probable that the defendant would not have been able to proceed to trial on January 3rd because of the conflict with his attorney. In addition the defendant was granted several continuances

from January 14th until February 11th to decide how to plead to the new indictment. Furthermore the defendant requested and was granted an additional week's continuance in May so that his new attorney could become more familiar with the proceedings. Finally, the court's calendar prevented a trial setting prior to May 2nd.

All of the district court's factual findings here are supported by the record. Actions of the defendant and the prosecutor, and the trial court's crowded calendar, all contributed to the delay in disposition of the charges against Rodriquez–Perez.

### 3. The defendant's assertion of his speedy trial rights

Defense counsel's first expression of concern about the trial date was Mr. Morris's February 11, 1994, oral request for an early trial setting. This was more than ten months after Rodriquez–Perez's arrest. Rodriquez–Perez's first unequivocal invocation of speedy trial guarantees occurred when he filed his motion to dismiss on April 28, 1994, some eleven days before the scheduled trial. The defendant's assertion of his rights at a relatively late point in the proceedings does not weigh in favor of dismissal under the *Barker* balancing process. *See State v. Beck,* 128 Idaho 416, 420–21, 913 P.2d 1186, 1190–91 (1996).

### 4. Prejudice to the defendant

Prejudice to the defendant arising from the delay is the final and most important factor in the *Barker* test. *State v. Cotant,* 123 Idaho 787, 789, 852 P.2d 1384, 1386 (1993); *Russell,* 108 Idaho at 62, 696 P.2d at 913. The defendant may experience prejudice in the form of extended pre-trial incarceration, prolonged anxiety or concern over outstanding charges or impairment of the accused's ability to present a defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Of these, the most serious is impairment of the defense. *Id.* The only evidence of prejudice in this case is that Rodriquez–Perez was incarcerated pending trial.

### 5. Balancing

The four foregoing factors, together with such other circumstances as may be relevant, must be weighed to determine whether there has been a violation of constitutional rights to a speedy trial. *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193; *Cotant,* 123 Idaho at 790, 852 P.2d at 1387. The district court carefully weighed the *Barker* factors and concluded that the balance tipped against dismissal. We agree. A substantial portion of the delay was attributable to the defendant's late-filed motion to suppress evidence, which caused a timely August 1993 trial date to be vacated. Three hearings on the motion and a defense request to submit a supporting brief consumed four additional months. Although the prosecution must shoulder some of the burden for the delay because of its decision to dismiss the delivery charge and to file a superseding trafficking charge, some of the delay following the second indictment is also attributable to two changes of defense counsel that occurred during the same period. Rodriquez–Perez did not unequivocally assert a constitutional right to a speedy trial until more than one year had elapsed since his arrest. This tends to undermine his current assertion that he wanted a trial to be held as soon as possible. The fact that Rodriquez–Perez suffered prejudice in that he was incarcerated pending trial does not, by itself, establish a constitutional speedy trial violation but must be weighed along with the other *Barker* factors to determine if dismissal is warranted. In the circumstances presented here, we conclude, as did the district court, that dismissal of charges based upon alleged violations of the defendant's constitutional rights to a speedy trial is not warranted.

### B. Idaho Code § 19–3501

We next address Rodriquez–Perez's argument that, in bringing him to trial thirteen months after his arrest, the State violated I.C. § 19–3501. That statute provides, in pertinent part:

The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

. . . .

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

When an accused who invokes this statute was not brought to trial within six months and shows that the trial was not postponed at his request, the burden then shifts to the prosecution to demonstrate "good cause" for the court to decline to dismiss the action. *Cotant,* 123 Idaho at 788, 852 P.2d at 1385; *State v. Lund,* 124 Idaho 290, 292, 858 P.2d 829, 831 (Ct.App.1993). To determine whether good cause exists, the courts apply the balancing test established by the United States Supreme Court in *Barker, supra,* for evaluation of alleged Sixth Amendment violations. *Cotant,* 123 Idaho at 788, 852 P.2d at 1385; *Russell,* 108 Idaho at 62, 696 P.2d at 913. Applying the *Barker* analysis to Rodriquez–Perez's constitutional claims, we have concluded that no constitutional violation occurred. We bear in mind that Section 19–3501 imposes a six-month time limit that is not applicable to the constitutional analysis.

Nonetheless, for the reasons stated above with respect to Rodriquez–Perez's assertion of violations of constitutional speedy trial guarantees, we conclude that the district court did not err in finding good cause under Section 19–3501 to deny the dismissal motion.

## III.

## CONCLUSION

We conclude that the district court correctly denied both Rodriquez–Perez's motion alleging prosecutorial vindictiveness and his motion to dismiss for violation of statutory and constitutional speedy trial guarantees. Therefore, the district court's order denying these motions is affirmed.

WALTERS, C.J., and PERRY, J., concur.