IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40549

| | | |
|---|---|---|
| **RONALD JOHN HUNTSMAN, SR.,** | ) | **2014 Unpublished Opinion No. 537** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: May 30, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Timothy L. Hansen, District Judge.

Order summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.  Lori A. Fleming argued.

_____

GRATTON, Judge

Ronald John Huntsman, Sr. appeals from the summary dismissal of his petition for post-conviction relief.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

We previously reviewed the circumstances of Huntsman's criminal case in *State v. Huntsman*, 146 Idaho 580, 582-83, 199 P.3d 155, 157-58 (Ct. App. 2008):

> The evidence presented at trial was that in March 2005, Huntsman and Larry Hanslovan kidnapped Kyle Quinton and Becky Boden and took them to Barbara Dehl's residence, where the three bound Quinton and Boden with packing tape, beat them, and questioned them about jewelry that Dehl claimed was missing from a safe in her house.  During the incident, someone implicated John Schmeichel in the theft of the jewelry.  Hanslovan and Huntsman then released Quinton from the restraints and took him to find Schmeichel.
>
> When the parties arrived at the residence where Schmeichel was staying, Hanslovan and Huntsman confronted him about the allegedly stolen property.  Subsequently, Schmeichel left with them in Hanslovan's vehicle.  While they

1

were driving back to Dehl's residence, Huntsman turned around from his position in the front passenger seat and shot Schmeichel in the face with a .38 caliber revolver, killing him. When they reached Dehl's residence, Hanslovan and Huntsman enlisted Quinton's help in removing the body from the vehicle and wrapping it in trash bags and a tarp. A day or two later, Huntsman and Hanslovan drove to Elmore County where they and two other individuals dug a shallow grave and buried Schmeichel's body.

A grand jury indicted Huntsman on one count of first degree murder with a sentence enhancement for using a firearm in the commission of the murder, and two counts of kidnapping. In the same indictment, Hanslovan was charged with two counts of kidnapping with firearm enhancements, and one count of trafficking in methamphetamine, and Dehl was charged with two counts of kidnapping and one count of trafficking in methamphetamine. After the court denied the defendants' motions for separate trials, but did allow the drug charges to be severed, Huntsman and his co-defendants pled not guilty and trial was scheduled to begin on October 11, 2005.

At a hearing on September 30, 2005, Dehl and Hanslovan moved to reschedule the trial for the purposes of continuing their investigation, and they waived their speedy trial rights. The state joined in the motion, advising the court that the previous day, one of its witnesses had turned over what was believed to be the murder weapon. The state requested that the trial be rescheduled to provide the parties the opportunity to investigate and test this newly discovered evidence. Huntsman, however, objected to the continuance and declined to waive his right to a speedy trial. The court granted the motion to continue as to Dehl and Hanslovan, but denied the state's request in regard to Huntsman, deciding that there was not good cause to continue the trial in light of Huntsman's assertion of his statutory speedy trial rights.

On October 6, the state filed a motion to dismiss the charges against Huntsman without prejudice. After a hearing, the court granted the motion. Several days later, a second indictment was filed charging Huntsman with the same charges as he had initially faced. The state then moved to consolidate his case with those of Hanslovan and Dehl. Huntsman opposed the motion, but it was granted by the court. Trial was scheduled to begin on April 10, 2006--almost six months after the second indictment had been filed.

In January 2006, Huntsman filed a motion to dismiss, claiming that his state and federal constitutional rights to a speedy trial had been intentionally violated when the prosecution dismissed and re-filed the identical charges. The district court never ruled on the motion and trial proceeded as scheduled--against Huntsman alone as his co-defendants negotiated plea bargains.

After a ten-day trial, the jury found Huntsman guilty as charged. The district court entered a judgment of conviction and imposed a unified life sentence with thirty years determinate for the first degree murder conviction and firearm enhancement, and a concurrent unified sentence of twenty years with ten years determinate for the kidnapping conviction.

Huntsman argued on appeal "that the district court erred by granting the state's motion to dismiss, that the dismissal without prejudice resulted in a violation of his due process rights, and that the district court judge showed partiality by suggesting to the prosecution that it could simply dismiss and re-file the charges against Huntsman." *Id.* at 583, 199 P.3d at 158. This Court affirmed explaining:

> Accordingly, where the court's grant of the state's motion to dismiss had the effect of terminating the criminal action against Huntsman in case number H0500555--and thus was an appealable order under I.A.R. 11(c)(4)--and Huntsman was aggrieved by the dismissal without prejudice, we conclude that Huntsman's failure to appeal the dismissal and the judge's actions in the initial case within forty-two days of the dismissal of that case or to pursue a motion to dismiss in the second case resulted in his appellate rights concerning case number H0500555 not being preserved.

*Id.* at 584, 199 P.3d at 159.

Huntsman filed a post-conviction claim. A subsequent amended petition alleged that his trial counsel was ineffective for failing to file a timely appeal from the dismissal of case number H0500555 and for failing to pursue the speedy trial issue in case number H0501438 (the case in which he was convicted). The petition alleged numerous other claims not relevant to this appeal. The district court ultimately granted summary dismissal on both claims of ineffective assistance of counsel. Huntsman timely appeals.

## II.

## ANALYSIS

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding governed by the Idaho Rules of Civil Procedure. I.C. § 19-4907; *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner,

3

and affidavits, records, or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included.  I.C. § 19-4903.  In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or it will be subject to dismissal.  *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  I.C. § 19-4906(c).  When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law.  *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.  Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence.  *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008).  Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them.  *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law.  *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996).  Thus, summary dismissal of a claim for post-conviction relief is

4

appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

## A.      Post-Conviction Jurisdiction Over a Dismissed Case

Huntsman alleged his trial counsel was ineffective for failing to file a timely appeal in his dismissed case. The district court concluded it did not have jurisdiction to grant post-conviction relief in a dismissed case because of the absence of a conviction. Whether a court lacks jurisdiction is a question of law that may be raised at any time and over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). The district court reasoned that it lacked jurisdiction because the Uniform Post-Conviction Procedure Act makes remedies available to those who have "been convicted of, or sentenced for, a crime." *See* I.C. § 19-4901(a). We agree that application of the UPCPA requires a conviction and/or

sentence from which relief may be granted. The statute's language is plain and unambiguous.[1] Because Huntsman was not convicted in the dismissed case, he was not entitled to a remedy under the post-conviction statute.

Huntsman argues that he is entitled to relief because but for his counsel's failure to timely file an appeal, the conviction in the subsequent case would not have occurred. Huntsman essentially makes the same claim he made in his direct appeal. Huntsman argued that by refiling the charges, the dismissed case was resurrected. We rejected this argument explaining:

> Common sense dictates that the granting of a motion to dismiss does, indeed, "terminate" a criminal action regardless of the prosecution's subjective intent to re-file the charges--in such a circumstance a defendant is no longer facing charges, is no longer in "jeopardy," and must be freed from incarceration. That such a proceeding is "resurrected" if identical charges are filed does not find any support in the rules, nor in our caselaw, and we will not read such an unsupported assertion into the appellate rules.

*Huntsman*, 146 Idaho at 584, 199 P.3d at 159. Similarly, Huntsman's claim that a court has the power to grant post-conviction relief in a dismissed case fails. The post-conviction statute applies in cases where a defendant has been convicted. This allows courts to review the proceedings in which a defendant was convicted and provide an appropriate remedy. Where charges are dismissed, the post-conviction statute is not implicated because there is no conviction in that case. A defendant who is later prosecuted after a case is dismissed may seek relief for any deficiencies that occurred in the case in which the conviction was obtained.

Huntsman also argues that Article I, § 5 of the Idaho Constitution and common law habeas corpus require a remedy regardless of whether there is a judgment of conviction in the dismissed case. However, as the State points out, habeas corpus has been subsumed by the post-

---

[1] Other provisions of the Uniform Post-Conviction Procedure Act similarly make clear that a court's authority to grant post-conviction relief from an otherwise final criminal proceeding is limited to criminal cases in which there was a conviction or sentence. *See* I.C. §§ 19-4902 (post-conviction "proceeding is commenced by filing an application verified by the applicant with the clerk of the district court in which the conviction took place"), 19-4903 (post-conviction application must "identify the proceedings in which the applicant was convicted" and "give the date of the entry of the judgment and sentence complained of"), 19-4907(a) ("[i]f the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings"). Nowhere in the statutory scheme is there any indication that a court has jurisdiction to grant relief in a criminal case in which the charges have been finally dismissed.

6

conviction statute. *See* I.C. § 19-4901(b).[2] Thus, in order to be entitled to relief, a petitioner must meet the requirements of the post-conviction statute, which requires a conviction. Additionally, even assuming there was freestanding habeas corpus relief available apart from the post-conviction statute, Huntsman would not be entitled to relief because he is not in custody under the dismissed case. He is in custody under the refiled case. Those proceedings resulted in his incarceration and are the means by which Huntsman is entitled to post-conviction review.

## B. Timeliness of Petition From the Dismissed Case

The district court also dismissed Huntsman's petition stemming from the dismissed case as untimely. Our review of the district court's construction and application of the limitation statute is a matter of free review. *Kriebel v. State*, 148 Idaho 188, 190, 219 P.3d 1204, 1206 (Ct. App. 2009). The statute of limitations for post-conviction actions provides that a petition for post-conviction relief may be filed at any time within one year from the expiration of the time for appeal, or from the determination of appeal, or from the determination of a proceeding following an appeal, whichever is later. I.C. § 19-4902(a). The appeal referenced in that section means the appeal in the underlying criminal case. *Gonzalez v. State*, 139 Idaho 384, 385, 79 P.3d 743, 744 (Ct. App. 2003). The failure to file a timely petition is a basis for dismissal of the petition. *Kriebel*, 148 Idaho at 190, 219 P.3d at 1206.

The district court entered its order dismissing the prosecution against Huntsman in case number H0500555 on October 7, 2005. Huntsman did not file a timely notice of appeal from the order of dismissal, and his dismissal became final forty-two days later on November 18, 2005. *See State v. Johnson*, 152 Idaho 41, 47, 266 P.3d 1146, 1152 (2011) ("A district court's dismissal of a criminal case is tantamount to a judgment and is final 42 days later, when the time for appeal runs."). Huntsman did not file his post-conviction petition until February 20, 2009. The refiling of the criminal charges did not change the determination of when the statutory clock began. *See Huntsman*, 146 Idaho at 583-84, 199 P.3d at 158-59 (the filing of charges did not resurrect the dismissed case for purposes of calculating the timeliness of the appeal). Huntsman claims that the statute of limitations period began after his direct appeal in case number H0501438. He

---

[2] "Except as otherwise provided in this act, it comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them." Idaho Code § 19-4901(b).

claims the failure of his counsel to timely appeal was not ripe until this Court declined to consider the issues in his direct appeal in case number H0501438. However, Huntsman knew that his attorney did not file an appeal in case number H0500555, and thus, his claim was ripe, if at all, as soon as that case became final forty-two days after its dismissal. Even assuming the district court could hear a post-conviction claim stemming from a dismissed case, Huntsman failed to timely file the claim within the statute of limitations period.

## C.     Right to a Speedy Trial

The district court also summarily dismissed Huntsman's claim of ineffective assistance of counsel for failing to pursue the motion to dismiss in case number H0501438 based on his speedy trial rights.[3] A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted ineffective assistance. *Hoffman v. State*, 153 Idaho 898, 904, 277 P.3d 1050, 1056 (Ct. App. 2012). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court

---

[3]     Additionally, Huntsman argues that the dismissal and refiling of the charges against him, and the impartiality of the original judge, violated his due process rights. However, he did not present these claims in the amended petition and thus, the arguments are not properly before this Court. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).

is generally determinative of both prongs of the *Strickland* test. *Hoffman*, 153 Idaho at 904, 277 P.3d at 1056.

Huntsman alleges his trial counsel failed to pursue the motion to dismiss based on his right to a speedy trial under the Sixth Amendment to the United States Constitution and Art. I, § 13 of the Idaho Constitution. Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.* To determine if there is a speedy trial violation under either the United States or Idaho Constitutions, the court employs the *Barker* balancing test. *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The court weighs: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *State v. Risdon*, 154 Idaho 244, 249, 296 P.3d 1091, 1096 (Ct. App. 2012) (citing *Barker*, 407 U.S. at 530).

### 1.    Length of delay

The length of delay is a triggering mechanism. Unless there is a delay that is presumptively prejudicial, it is unnecessary to inquire into the other three factors. *State v. Folk*, 151 Idaho 327, 332, 256 P.3d 735, 740 (2011). Whether the delay is presumptively prejudicial depends on the circumstances, nature, and complexity of each case. *Id.* at 332-33, 256 P.3d at 740-41. For example, the delay tolerated in the prosecution of an ordinary street crime is considerably less than what is tolerated in a complex conspiracy case. *Risdon*, 154 Idaho at 250, 296 P.3d at 1097. Generally, a delay is not presumptively prejudicial until it approaches one year. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Under the Sixth Amendment, the length of delay is measured from the date of the indictment, information, or arrest. *United States v. Marion*, 404 U.S. 307, 320 (1971). Under the Idaho Constitution, the length of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001).

Here, Huntsman was arrested on March 24, 2005, and the indictment was filed on April 26, 2005. Huntsman's jury trial began on April 10, 2006. Thus, the period of delay was approximately twelve and one-half months. Huntsman argues that because the State was

9

prepared to go to trial within six months, the twelve-month delay is sufficient to trigger the consideration of the *Barker* factors. The district court assumed the delay was presumptively prejudicial, and on appeal the State concedes that the delay is sufficient to trigger the *Barker* analysis. Like the district court, we will assume that the delay was presumptively prejudicial, but conclude that in light of the complexity and circumstances of Huntsman's case, the length of delay is minimal.

Despite Huntsman's characterization of the case as a "straightforward murder," Huntsman's case went well beyond a simple street level crime. Huntsman and a co-defendant kidnapped two people and took them to a residence. They were joined by another co-defendant and they bound and beat the victims and questioned them about allegedly stolen jewelry. When Huntsman learned of the identity of the suspected thief, he and one of the co-defendants went to confront him. After the confrontation and while transporting the man back to the residence, Huntsman shot him in the face. Huntsman and the co-defendant, with the help of others, wrapped the body in trash bags and eventually buried the body in a shallow grave.

Huntsman was indicted for first degree murder and two counts of kidnapping. The co-defendants were charged with kidnapping and trafficking in methamphetamine. The district court denied the request to separate the trials, but allowed the drug charges to be tried separately. The initial trial was set to begin October 11, 2005. On September 30, 2005, the two co-defendants sought to continue the trial to allow further investigation to prepare a defense. The State joined the motion to continue due to the discovery of the murder weapon. The court granted the co-defendants' motion, but allowed Huntsman to exercise his statutory speedy trial rights. However, the State filed a motion to dismiss the charges against Huntsman to allow forensic testing of the recovered firearm. The motion was granted without prejudice. The State then filed a second indictment charging Huntsman with the same charges contained in the first indictment. The State moved to consolidate the trials; Huntsman opposed the motion, but the district court granted the State's request. Huntsman was ultimately tried alone due to the co-defendants reaching plea agreements with the State. Huntsman filed a motion to dismiss claiming that his speedy trial rights were violated, but the court never ruled on the motion. After a ten-day trial, the jury found Huntsman guilty as charged. Based on the foregoing, even assuming the delay of twelve and one-half months is sufficient to trigger the analysis of the

10

remaining *Barker* factors, the delay is minimal when compared with the complexity and circumstances of Huntsman's crime, the investigation, and the criminal case.

### 2. Reason for delay

The second factor weighs heavily against Huntsman. The State sought the continuance, which ultimately required a dismissal, to allow the testing of the recently discovered murder weapon. Considering Huntsman was charged with first degree murder, the State's desire to have the weapon tested to confirm or dispel its relationship to the murder is sound. Further, this Court has previously approved of the dismissal and refiling of charges to allow the admittance of newly discovered evidence. *See State v. Averett*, 142 Idaho 879, 885, 136 P.3d 350, 356 (Ct. App. 2006) ("Such new evidence constitutes a sufficient basis to dismiss and re-file charges.").

Huntsman concedes that the reason for delay was the State's desire to test and evaluate the firearm to establish its relevance at trial, but he argues that because the State wanted the continuance, the reason for delay weighs in his favor. Huntsman also contends that the State sought the delay to allow the admittance of evidence that was not disclosed within the original discovery deadline. However, Huntsman has pointed to nothing in the record to show the State willfully delayed the trial to preempt the court's discovery order. The motion to continue hearing and the circumstances surrounding the discovery of the firearm contradict Huntsman's unsupported claim that the State intentionally sought to delay the case to gain an advantage.

Huntsman also relies on *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005), where this Court distinguished the validity of a reason to delay a trial based on the true unavailability of a witness, which is a valid reason, with the mere inconvenience of a witness, which fails to justify a delay. Huntsman asks this Court to apply the reasoning in *Davis* and hold that like the mere inconvenience of a witness that fails to justify a delay, "the same should be true for the missing murder weapon." Huntsman contends that because the State was ready to proceed without the murder weapon and the State could have presented witness testimony in place of the weapon, that the weapon is more akin to a witness's inconvenience. We decline to equate the newly discovered murder weapon with a witness's convenience in attending a trial.

Huntsman also contends that the State's failure to earlier search the trailer where the firearm was given to officers suggests that the reason for the delay weighs in his favor. The firearm was eventually given to police by a known witness. The witness had misled officers about the firearm, but eventually turned over the weapon at his trailer. From this, Huntsman

11

contends officers should have searched the trailer previously and he presumes that if the residence had been searched, the firearm would have been recovered. We decline to speculate as to whether a search would have resulted in earlier discovery of the firearm. The weapon was in the possession of a third party and unavailable to the State. When it was given to officers, the prosecutor immediately contacted defense counsel to alert them of the discovery. With the discovery, there existed a compelling reason to delay the trial and this factor weighs heavily against Huntsman.

### 3. Assertion of rights

The third factor, assertion of speedy trial rights, weighs in favor of Huntsman. When his co-defendants and the State sought to continue the trial beyond the statutory six-month time requirement, Huntsman affirmatively asserted his speedy trial rights.

### 4. Prejudice

The nature and extent of prejudice is the most important of the *Barker* factors. *State v. Lopez*, 144 Idaho 349, 354, 160 P.3d 1284, 1289 (Ct. App. 2007). Prejudice is to be assessed in light of the interests the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility the defense will be impaired. *Risdon*, 154 Idaho at 251, 296 P.3d at 1098. "The third of these is the most significant because a hindrance to adequate preparation of the defense skews the fairness of the entire system." *Id.* (citing *Barker*, 407 U.S. at 532). Huntsman argues that he was prejudiced by the delay because the State was able to introduce evidence at trial that it would not have been able to introduce but for the State dismissing and refiling the case, specifically fingerprint and ballistic evidence. The firearm was also introduced with FBI analysis and two additional witnesses testified who were discovered after the original trial date.

However, Huntsman was given the opportunity to prepare for the evidence and witnesses. The evidence was initially excluded because the State failed to comply with the discovery deadline. Upon refiling, the deadline was reset and Huntsman then had the necessary time to review and present a defense to the evidence. Similarly, the firearm and the witnesses discovered after the dismissal did not prejudice Huntsman's ability to present his defense. Relevant prejudice under speedy trial analysis is the type that inhibits a defendant's ability to adequately prepare a defense, not the State's ability to prepare the prosecution. On the other

12

hand, Huntsman was incarcerated for a little over one year and undoubtedly felt the anxiety that any individual would feel while awaiting charges of first degree murder and kidnapping.

Weighing the limited prejudice suffered from incarceration and Huntsman's assertion of his speedy trial rights against the relatively short length of delay (considering complexity of the case) and the valid reason to delay the trial, the district court correctly concluded that Huntsman could not establish a reasonable probability of success on the abandoned motion.

## III.

## CONCLUSION

The district court was without jurisdiction to consider a petition for post-conviction relief from the dismissed case. In addition, the claim arising from the dismissed case was not timely filed. Huntsman also could not establish a reasonable probability of success on the abandoned motion to dismiss. Therefore, the district court's order summarily dismissing Huntsman's petition for post-conviction relief is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**